TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KEITH D. ELLISON (Cal. Bar No. 307070)
Assistant United States Attorney
International Narcotics, Money
 Laundering & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: 213-894-6920
     Facsimile: 213-894-0142
     E-mail: keith.ellison2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-38-DSF |
| Plaintiff, | OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT; DECLARATION OF GABRIEL PEREZ |
| v. | |
| BRADFORD SHEPLEY, | Hearing Date: September 6, 2021 |
| Defendant. | Hearing Time: 9:00 a.m.<br>Location:  Courtroom of the<br>                   Hon. Dale S. Fischer |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Keith D. Ellison, hereby files its Opposition to defendant's Motion to Dismiss Count Two of the Indictment.

///

///

This opposition is based upon the attached memorandum of points and authorities, the attached declaration of Gabriel Perez, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 3, 2021                    Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


          /s/
KEITH D. ELLISON
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant is charged in Count Two of the Indictment with distributing heroin that resulted in K.S.'s death. He has received discovery. And the government is helping him obtain specimens collected from K.S. from a third-party laboratory for further analysis. His motion to dismiss reflects his hope to find exculpatory evidence that does not exist; but it does not provide a basis for dismissing any portion of the Indictment. Because a pretrial motion is not the proper vehicle for challenging the evidence of his guilt, and because defendant cannot show a due process violation for the failure to preserve potentially exculpatory evidence, defendant's motion must be denied.

**II.   STATEMENT OF FACTS**

After K.S.'s parents found him dead, with a syringe partially full of heroin in his hand, the Ventura County Medical Examiner's Office initiated a forensic examination that included the collection of femoral blood and urine specimens from K.S. (Declaration of Gabriel Perez ("Perez Declaration") ¶ 2.a., Exhibit A.) Because they provided the most extensive forensic testing in the country, and offered results routinely used in court cases, the Ventura County Medical Examiner's Office sent the specimens collected from K.S. to NMS Labs for toxicological screening and analysis. (Id. ¶ 2.b.; Dkt. 48-1 at 17.) NMS Labs conduct poly-drug testing of the specimens for, amongst other compounds, the following general compound classes:

> Amphetamines, Anticonvulsants, Antidepressants, Antihistamines, Antipsychotic Agents, Benzodiazepines, CNS Stimulants, Cocaine and Metabolites, Hallucinogens, Hypnosedatives, Hypoglycemics, Muscle Relaxants, Non-Steroidal Anti-Inflammatory Agents, Opiates and Opioids

(Perez Declaration Exhibit A at 15.)  Ultimately, Dr. Christopher Young of the Ventura County Medical Examiner's Office concluded, based on his review of the evidence, to include the toxicological analysis, that K.S. died as a result of heroin intoxication.  (Id. at 16.)

Jonathan Lowe ("Lowe") was indicted for distributing the heroin that resulted in K.S.'s death on December 28, 2018.  United States v. Lowe, et al., CR 18-914-DSF, ECF No. 1 (C.D. Cal. Dec. 18, 2018).  At the request of Lowe's counsel, and with the government's consent, the Ventura County Medical Examiner's Office coordinated the transfer of the femoral blood and urine specimens collected from K.S. from NMS Labs to Alere Forensics (now known as Ascertain Forensics) for independent forensic toxicological analysis on or about May 15, 2019. (Perez Declaration ¶ 3.)

Defendant was indicted in this related case on January 17, 2020. (Dkt. 1)  At a point in time unknown to the government, defendant received a copy of the Forensic Laboratory Report prepared by Alere Forensics.  (See Dkt. 48 at 5 ("Additional testing, using the same femoral blood sample was performed by Alere Forensics, which detected a similarly low-level of the metabolites associated with heroin use.")  The government is unaware whether defendant attempted to determine if Ascertain Forensics was still in possession of any specimens.

By way of the instant motion, defendant seeks a dismissal of Count Two of the Indictment because, he alleges, the femoral blood and urine specimens collected from K.S. were destroyed.  (Dkt. 48 at 17-18.)  But quantities of the specimens suitable for further analysis still exist.  (Perez Declaration ¶ 5.)  In response to

defendant's motion, the government contacted Ascertain Forensics and is working with the company to coordinate the transfer of the remaining specimens to a laboratory of defendant's choosing for further analysis.  (Perez Declaration ¶¶ 5, 6, 7.)

**III. ARGUMENT**

    **A.  The Allegations in the Indictment are Sufficient to Warrant a Trial on the Merits**

The Indictment sufficiently charges defendant with the distribution of heroin, and aiding and abetting the distribution of heroin, resulting in the death of K.S., in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 18 U.S.C. § 2(a).  An indictment is a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  It must provide enough information so the defendant can understand the charges, prepare a defense, and claim double jeopardy where appropriate.  United States v. Musacchio, 968 F.2d 782, 787 (9th Cir. 1991).  But it need not contain "detailed allegations."  United States v. Resendiz-Ponce, 549 U.S. 102, 110 (2007).  And a defendant may not challenge an indictment on the ground that there is inadequate evidence to prove the charges.  Costello v. United States, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits.").  When considering a defendant's pretrial motion to dismiss, the Court must presume the truth of the allegations in the charging instrument.  United States v. Caicedo, 47 F.3d 370, 371 (9th Cir. 1995).

    Here, the indictment alleges the facts necessary to inform defendant of the charges he faces, including the charge of

3

distribution of heroin resulting in death as alleged in Count Two of the Indictment.  He does not argue otherwise.  Instead, defendant argues that the "evidence fails to establish a cause of death."  (CR 47 at 4.)  But his argument is proper only for trial.  See Costello, 350 U.S. at 363.  Accordingly, to the extent defendant challenges the sufficiency of evidence underlying the Indictment, the Court can simply look at the allegations on the face of the Indictment and deny defendant's motion to dismiss.

### B. Defendant Cannot Show a Due Process Violation for Lost or Destroyed Evidence

Defendant also argues that the government's failure to preserve critical evidence warrants a dismissal of Count Two of the Indictment.  This argument is similarly uncompelling -- most notably because there are specimens available for his analysis.  Prior to defendant's indictment, the government coordinated the transfer of the specimens collected from the decedent to a third-party laboratory -- outside of the government's possession, custody, or control -- for independent analysis at the request of a related defendant.  (Perez Declaration ¶ 3.)  The government has since learned that the laboratory still possesses those specimens in quantities sufficient for further analysis and is working with defendant to obtain portions for his own analysis.  (Id. ¶¶ 5, 6, 7.)  Thus, the specimens are not lost or destroyed, though they remain outside of the government's possession, custody, or control as of the filing of this opposition.

The government's duty to preserve evidence is limited to that which "possesses an exculpatory value that was apparent before" it was lost or destroyed, and for which "the defendant would be unable to obtain comparable evidence by other reasonably available means."

4

1  California v. Trombetta, 467 U.S. 479, 489 (1984).  And even where
2  these first two criteria are met, the failure to preserve potentially
3  exculpatory evidence rises to a due process violation only if the
4  government acted in bad faith.  Arizona v. Youngblood, 488 U.S. 51,
5  57-58 (1988).  The burden falls to defendant to defendant to prove as
6  much.  United States v. Rambo, 74 F.3d 948, 955 (9th Cir. 1996).

From the outset, because defendant is able to "obtain comparable evidence" -- in fact the very evidence he seeks -- by "reasonably available means," his due process claim fails.  Trombetta, 467 U.S. at 489.  Even if he were to meet this criterion, however, he would not be able to show that the specimens possessed exculpatory value, nor could he show bad faith by the government.[1]

### 1. Defendant only offers mere speculation about the exculpatory value of the evidence.

As noted above, the government's duty to preserve evidence is limited to that which "possesses an exculpatory value that was apparent before" it was lost or destroyed.  Id.  Speculation that unpreserved evidence would have proven exculpatory if retained is insufficient to meet this criterion.  See Id. at 489-90 (original breath samples in DUI cases might have conceivably contributed to defense, but chances were low that preserved samples would have been exculpatory); see also United States v. Martinez-Martinez, 369 F.3d 1076, 1087 (9th Cir. 2004) ("[T]he fact that the evidence may have proven exculpatory — it very well may have inculpated [the defendant] further — does not render it per se 'material.'").  "The mere failure

---

[1] Defendant also fails to address why the Alere Forensics analysis and report does not provide reasonable comparable alternative evidence.

5

to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation." <u>United States v. Hernandez</u>, 109 F.3d 1450, 1455 (9th Cir. 1997).

Here, defendant claims that the femoral blood specimens at issue "[were] not tested for other drugs, despite the abundant evidence of polysubstance abuse at the death scene." (Dkt. 48 at 14.) Yet his claim is directly refuted by the evidence in this case. The toxicology report provided to defendant in discovery specifically notes that one of the performed analyses screened for the following non-exhaustive list of general compound classes:

> Amphetamines, Anticonvulsants, Antidepressants, Antihistamines, Antipsychotic Agents, Benzodiazepines, CNS Stimulants, Cocaine and Metabolites, Hallucinogens, Hypnosedatives, Hypoglycemics, Muscle Relaxants, Non-Steroidal Anti-Inflammatory Agents, Opiates and Opioids

(Perez Declaration, Exhibit A at 15.) Moreover, defendant does not point to a single medication or compound that was not tested for, nor does he state why testing for any such medication or compound should have been apparent. And he does not state why that testing would have proven exculpatory, especially where the lack of such medications or compounds may further inculpate defendant. Instead, he baselessly claims that the government failed to test for any other drugs, despite the evidence to the contrary. (<u>See also</u> Dkt. 48-1 at 17 ("NMS provides the most extensive forensic testing in the country"), 19 ("poly-drug testing was performed").) Accordingly, defendant's claims about the potentially exculpatory value of the specimens are nothing more than pure speculation and do not demonstrate a due process violation.

        2.   <u>Defendant cannot show the government acted in bad faith.</u>

Defendant also fails to show that the government acted in bad faith by failing to preserve the specimens. An analysis of bad faith must consider the government's intent in failing to preserve the evidence at issue. See <u>Phillips v. Woodford</u>, 267 F.3d 966, 987 (9th Cir. 2001) (no bad faith where defendant made "no colorable showing, or indeed any showing at all that the State destroyed the [evidence] to prevent disclosure of evidence favorable to the defense"); <u>Featherstone v. Estelle</u>, 948 F.2d 1497, 1505 (9th Cir. 1989) (no bad faith where it was "clear that [the destruction of evidence] was not deliberately done to deprive petitioner of access to relevant evidence"). The analysis must also consider the government's knowledge of the exculpatory value of the evidence at the time of the loss. See <u>Youngblood</u>, 488 U.S. at 57 n. * ("The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."); <u>see also</u> <u>Mitchell v. Goldsmith</u>, 878 F.2d 319, 322 (9th Cir. 1989) ("The police did not know the semen samples would have exculpated the defendant when they failed to perform certain tests or refrigerate certain samples, hence there was no bad faith on the part of the police.") (cleaned up).

Here, any failure by the government to preserve specimens arises out of the government's efforts to allow a related defendant to perform the additional testing that defendant now claims he needs to do. (Perez Declaration ¶ 3.) In other words, the government coordinated the provision of the specimens to a related defendant so

7

that the related defendant could try to find something exculpatory, not to prevent disclosure of exculpatory evidence. Moreover, the government is actively working with defendant to ensure he has a portion of those specimens for his own analysis. (Id. ¶¶ 5, 6, 7.) Under these circumstances, defendant cannot show that the government acted in bad faith. And this is before a consideration of the government's knowledge of the exculpatory value of the evidence at the time of the loss, which, as discussed above, defendant similarly cannot show. Thus, defendant fails to demonstrate any bad faith by the government.

For all of these reasons, defendant's claim that the government's failure to preserve K.S.'s specimens warrants dismissal must fail.

**C.    Defendant's Request for a Daubert Hearing is Premature**

The government has provided defendant with a case report prepared by Dr. Young of the Ventura County Medical Examiner's Office in discovery, but the government has not provided him with notice of an expert witness for purposes of testimony as to the nature and causes of K.S.'s death at trial. Accordingly, any request for a hearing for the Court to assess the reliability and appropriateness of that witness's expected testimony is premature. Federal Rule of Criminal Procedure 16(a)(1)(G) provides, in part, that, following a request from the defendant, the government must produce a summary of anticipated expert testimony that "describe[s] the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Because defendant recently requested a continuance of the trial date (Dkt. 49), the government has neither made a final determination as to who it may call as an expert witness related to

8

such testimony nor provided defendant with the corresponding notice. Although Rule 16 does not set forth the precise timing when disclosure should be made, the government intends to do so well in advance of trial.[2]

Even if the government elects to call Dr. Young as defendant presumes, however, it is premature for defendant to seek a hearing to evaluate the appropriateness of Dr. Young's testimony without sufficient expert notice, to include a description of the witness's qualifications.  And while the government does not have concerns regarding the reliability of any anticipated expert testimony, there is also no need for the Court to conduct a pretrial hearing to ensure such testimony satisfies the test of scientific validity required by Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), this far removed from the trial date.  See United States v. Alatorre, 222 F.3d 1098, 1100 (9th Cir. 2000) ("trial courts are not compelled to conduct pretrial hearings" before expert testimony may be admitted at trial).  Therefore, even if the Court ultimately determines a Daubert hearing is appropriate, it need not conduct such a hearing at this point.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion.

---

[2] The government further notes that any expert testimony at trial will rely on the Ventura County Medical Examiner's case report that has already been provided to defendant.