# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>            v.<br><br>BRADFORD SHEPLEY,<br>    Defendant. | CR 20-38 DSF<br><br>Order DENYING Ex Parte Application for Discovery of Medical Records (Dkt. 54) |

Defendant Bradford Shepley moves ex parte for permission to serve the "California Department of Justice, CURES Program, doctors, hospitals, and treatment centers" with subpoenas for the medical records of K.S. Dkt. 54 (Application). The government opposes the Application, referring the Court to docket 51.[1] Shepley's earlier-filed motion for a discovery order requiring the government to seek K.S's medical records, dkt. 47, which the government opposed, dkt. 51, is still pending.[2] His motion for dismissal of Count Two of the indictment based on insufficient and incompetent evidence, dkt. 48 (Mot. to Dismiss), which the government also opposed, dkt. 52 (Opp'n to Mot. to

---

[1] The Opposition is conclusory on this point and little help to the Court in evaluating the Application.

[2] It appears that motion may now be moot.

Dismiss) is still pending. The Application is DENIED without prejudice.

## I. BACKGROUND

After Shepley, Jonathan Lowe, and Arielle Tepel allegedly sold heroin to K.S. on November 5, 2017, dkt. 1 (Indictment), K.S.'s parents found him dead in his bedroom with a syringe partially full of heroin in his hand. Opp'n to Mot. to Dismiss at 3; dkt. 52-1 (Medical Report) at 3. When he was found, K.S. had "[n]umerous RX drugs" in his bedroom, including "buspirone, trazodone, clonazepam, naltrexone, abilify, quietapine, and doxyc[y]cline," Medical Report at 3, to treat his "anxiety, depression, insomnia, panic disorder, opioid dependence, and bipolar disorder." Mot. to Dismiss at 1.

On November 7, 2017, the Ventura County Medical Examiner's Office performed an autopsy and took femoral blood and urine samples from K.S. Mot. to Dismiss at 1; Medical Report at 11. The Examiner's Office then sent samples to the National Medical Services Laboratory (NMS Labs), which conducted testing on the femoral blood samples. Mot. to Dismiss at 1; Opp'n to Mot. to Dismiss at 1. NMS Labs conducts "poly-drug testing of the specimens for, amongst other compounds, the following general compound classes: Amphetamines, Anticonvulsants, Antidepressants, Antihistamines, Antipsychotic Agents, Benzodiazepines, CNS Stimulants, Cocaine and Metabolites, Hallucinogens, Hypnosedatives, Hypoglycemics, Muscle Relaxants, Non-Steroidal Anti-Inflammatory Agents, Opiates and Opioids." Opp'n to Mot. to Dismiss at 1; Medical Records at 15. The testing revealed a morphine concentration of 88 ng/mL in K.S.'s blood. Medical Records at 11. Dr. Christopher Young of the Examiner's Office concluded from the testing and his review of the evidence that K.S. died as a result of heroin intoxication. Id. at 16.

Shepley provided expert reports that raise doubts about the cause of K.S.'s death.[3]

## II. DISCUSSION

Shepley has now apparently received information concerning K.S.'s medical history and medical providers from K.S.'s parents and wants permission to subpoena records of those providers. But the proposed subpoenas are overbroad. Although the reports of the defense experts raise questions about the validity of Dr. Young's conclusion about the cause of K.S.'s death, they do nothing to explain why records from as many as five years preceding K.S.'s death are relevant. Nor do they explain why all of the items requested are relevant. See, e.g., Subpoena to Carol R. Kiriakos (requiring production of "all records and diagnoses (including charts, notes (both doctors and nurses), requested tests and results, x-rays, scans, emails and other communications from November 5, 2013 to November 2017 concerning the medical condition/s of [K.S.]. In addition, you must provide records of all prescriptions issued to [K.S.] for a period five years prior to [K.S.'s] overdose on November 5, 2017."); Subpoena to La Ventana Treatment Programs (requiring production of numerous categories of information and purporting to require the subpoenaed party to prepare several lists).

Shepley may submit more narrowly drawn proposed subpoenas supported by expert declarations explaining why the requested documents are relevant to Shepley's defense.

IT IS SO ORDERED.

Date: July 6, 2021

Dale S. Fischer
United States District Judge

---

[3] Those reports are attached to docket 48, not docket 47 as suggested by Shepley.